UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION


FILED
NOV 13 2017
CLERK

| | |
|---|---|
| JAMES VALLEY COOPERATIVE TELEPHONE COMPANY, A SOUTH DAKOTA COOPERATIVE; JAMES VALLEY COMMUNICATIONS, INC., A SOUTH DAKOTA CORPORATION; AND NORTHERN VALLEY COMMUNICATIONS L.L.C., A SOUTH DAKOTA LIMITED LIABILITY COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> SOUTH DAKOTA NETWORK, LLC, A SOUTH DAKOTA LIMITED LIABILITY COMPANY, <br><br> Defendant. | 1:17-CV-01022-RAL <br><br><br> OPINION AND ORDER ON PENDING MOTIONS |

This case began with a state court complaint filed in Brown County, Fifth Judicial Circuit, South Dakota, back in 2015. Doc. 3-2 (Complaint dated March 25, 2015); Doc. 1 (Notice of Removal indicating service occurred on June 6, 2015). On August 30, 2017, Defendant South Dakota Network, LLC (SDN) filed a Notice of Removal in this Court, asserting federal question jurisdiction under 28 U.S.C. § 1331. Doc. 1. SDN filed with its Notice of Removal two motions: 1) a Motion to Consolidate Related Actions, Doc. 5, seeking to consolidate this case with the factually related case of Northern Valley Communications, LLC v. AT&T Corp., 14-CV-1018-RAL, long pending in this Court; and 2) a Motion for Modified Confidentiality Agreement and Access to Certain Filings in 14-CV-1018-RAL, Doc. 7.

1

Plaintiffs James Valley Cooperative Telephone Company, James Valley Communications, Inc., and Northern Valley Communications, LLC (collectively "Plaintiffs") filed a Motion to Remand on September 14, 2017. Doc. 17. This Court held a motion hearing on October 25, 2017, on the pending motions. For the reasons explained below, Plaintiffs' Motion to Remand, Doc. 17, is granted; the Motion to Consolidate Related Actions, Doc. 5, is denied as moot; and the Motion to Modify Confidentiality Agreement, Doc. 7, is denied without prejudice to seeking relief otherwise.

I. **Summary of Facts Relevant to Pending Motions**

SDN is a South Dakota limited liability company existing under Federal Communications Commission (FCC) and State Public Utility Commission orders. SDN provides for centralized equal access (CEA) service in South Dakota using an access tandem switch in Sioux Falls. SDN is owned by a group of 17 incumbent local exchange carriers (ILECs) and provides a centralized point for the aggregation and exchange of long distance telecommunication traffic. SDN is governed by a board of managers.

Plaintiff James Valley Cooperative Telephone Company (JVT) is a member of SDN. JVT is an ILEC that provides telephone services in Brown County, South Dakota. JVT owns Plaintiff James Valley Communications, Inc., which is the sole member of Plaintiff Northern Valley Communications, LLC (NVC). NVC is a competitive local exchange carrier (CLEC) that provides telecommunications and information services in certain areas of Brown County and Spink County in northeastern South Dakota. Over 90% of NVC's telecommunications business comes from a practice known as "access stimulation," by affiliation with out-of-state entities that generate high volumes of calls, such as free conference calling services. Access stimulation is a controversial business practice that has led to litigation before the FCC and elsewhere.

NVC's access stimulation business and its dispute with AT&T over billing for those calls gave rise to both this lawsuit and the related lawsuit pending as 14-CV-1018-RAL. AT&T is an interexchange carrier (IXC), which is responsible for carrying telephone traffic between local exchange carriers (LECs) and different geographic areas, enabling long-distance phone service. As a LEC, NVC is responsible for a service known as "exchange access," which connects local customers to the IXC in order to call and receive calls from other LECs. NVC has used SDN's access tandem switch services to do so.

Because of uncertainty with the rules surrounding access stimulation and charges resulting therefrom, AT&T and NVC have had and settled disputes in the past regarding AT&T's payments to NVC. Doc. 1-1 at 42 of 86. The FCC addressed the access stimulation practice in In re Connect America Fund, A National Broadband Plan For Our Future, 26 FCC Rcd. 17663, 17874–90 (2011) [hereafter Connect Am. Fund Order], in which the FCC sought to provide greater clarity to the access stimulation practice. Id. at 17667, 17676. After the Connect Am. Fund Order, NVC filed a new tariff with the FCC that took effect in January of 2012. AT&T paid NVC's invoices until the March 2013 invoice, after which AT&T paid NVC for its end office switching charges, but not for transport charges. Doc. 1-1 at 42 of 86. FCC decisions have provided some guidance on how CLECs like NVC can collect from an IXC like AT&T when the CLEC is engaged in access stimulation. In short, NVC may collect from AT&T based on either a negotiated rate with AT&T or a properly "benchmarked" rate. See Quest Commc'ns Co., LLC v. N. Valley Commc'ns, LLC, 26 FCC Rcd. 8332, 8334–35 (2011); Connect Am. Fund Order, 26 FCC Rcd. at 17886; see also N. Valley Commc'ns v. AT&T Corp., 245 F. Supp. 3d 1120, 1130 (D.S.D. 2017). However, an IXC like AT&T may be able to install a direct trunk from the IXC's point of presence to the end office of the CLEC, thereby avoiding tandem

switching functions and the transport charges that make access stimulation potentially so profitable to an entity like NVC. In re Access Charge Reform, 26 FCC Rcd. 2556, 2565 (2008) (decision known as "PrairieWave"); N. Valley Commc'ns, 245 F. Supp. 3d at 1131.

As part of its CEA services, SDN provides tandem switch services for the exchange of telecommunications traffic between LECs like JVT and NVC with IXCs like AT&T. Doc. 3-53[1] at 3. NVC has utilized the CEA services of SDN since 1999 pursuant to lease agreements and other contracts. Doc. 3-53 at 3. SDN bills AT&T separately for its services related to the CLEC NVC's calls connected to the IXC AT&T. A month after AT&T began withholding payment from NVC, AT&T in April of 2013 began withholding payment from SDN as well. Doc. 3-53 at 4.

Some communications had occurred between NVC and AT&T for some alternative arrangement for handling the access stimulation generated volume of calls, but no agreement resulted. Doc. 3-53 at 4. SDN's board of managers met in November of 2013 without the Plaintiffs' participation to address the billing dispute with AT&T. Doc. 3-53 at 4. After that meeting, SDN notified NVC that it intended to negotiate separately with AT&T, NVC objected and sent a cease and desist letter to SDN, and SDN then attempted to work with NVC to resolve the dispute with AT&T. Doc. 3-53 at 4. In early December of 2013, SDN and NVC representatives met in Groton, South Dakota, to discuss matters relating to nonpayment of bills by AT&T and related issues. SDN and NVC dispute whether an agreement was reached during the meeting. Doc. 3-53 at 4.

---

[1] Document 3-53 cited here is South Dakota Circuit Judge Scott P. Myren's Memorandum Decision dated March 9, 2017, in the state case sought to be removed. This particular Court makes no factual findings in this Opinion and Order, but draws information from Judge Myren's decision that appears to be not genuinely disputed.

In July of 2014, NVC sued AT&T in the United States District Court for the District of South Dakota. 14-CV-1018-RAL, Doc. 1. Thereafter, on September 18, 2014, SDN entered into a separate agreement with AT&T which provided for a contract rate to provide transport for access stimulation traffic between Sioux Falls and Groton. Doc. 3-53 at 4–5. NVC had been billing and was seeking to collect from AT&T a tariff rate for transport charges including for the mileage between Sioux Falls and Groton. The effect of the SDN-AT&T agreement was to undercut NVC's damage claim[2] against AT&T for those transport charges and to provide AT&T an argument of a defense to that portion of NVC's damage claim. As this Court previously put it:

> AT&T argues that it is not responsible for any transport charges after September 2014 between Sioux Falls and Groton because SDN, rather than NVC, was providing that transport pursuant to a negotiated agreement with AT&T. Despite AT&T's arguments to the contrary, it is a material issue whether SDN had the ability to enter into an agreement with AT&T or had a binding agreement with NVC such that it could not. After all, the FCC has deemed it a violation of 47 U.S.C. § 201(b) for a LEC to bill an IXC for transport services that offered no advantage to the IXC. Thus, if AT&T and SDN have a valid agreement under which SDN is providing to AT&T the transport services between Groton and Sioux Falls, NVC cannot collect for that service.

N. Valley Commc'ns, 245 F. Supp. 3d at 1143–44.

Plaintiffs in this case sued SDN in state court in 2015 through a complaint alleging various state law claims. Doc. 3-2. When SDN filed its answer, defenses, counterclaim, and third-party complaint on July 20, 2015, SDN alleged a federal law preemption defense, Doc. 3-4 at 11, and made certain state law counterclaims against Plaintiffs under theories of breach of contract, state law civil conspiracy, and expulsion of JVT from the SDN operating agreement,

---

[2] NVC makes that damage claim for transport charges between Sioux Falls and Groton against AT&T nevertheless in 14-CV-1018-RAL.

5

Doc. 3-4. Plaintiffs subsequently have twice been allowed to amend their state court complaint, with the Second Amended Complaint having been filed in or around April of 2016.

In state court in this case, SDN filed a Motion to Dismiss and Alternative Motion to Stay Proceedings and Refer Issues to the FCC and a Motion to Strike or Exclude certain expert opinions. Through that motion, SDN argued that all of Plaintiffs' claims arise under federal law and are preempted. Doc. 3-60 at 2. The Honorable Scott P. Myren granted the motion in part and denied the motion in part. Judge Myren carefully navigated through the remaining claims, defenses, and expert opinions to confine the case to state law claims. Judge Myren recognized:

> This Court [state trial court for Brown County] lacks subject matter jurisdiction over claims for violation of the [Federal Communications Act] because the federal courts have exclusive jurisdiction to adjudicate those claims. However, lack of subject matter jurisdiction over these precise areas does not necessarily mean a state law claim must be dismissed.

Doc. 3-60 at 7. Judge Myren then went through each state law claim to explain how the claims were based strictly on state law and not a federal statute or claim. See Doc. 3-60 at 8–10 (clarifying that Plaintiffs' breach of contract claims did not and could not challenge "rate, terms or conditions of telecommunications service"); Doc. 3-60 at 11–12 (explaining that intentional interference with business relationships claim was not predicated on alleged violation of federal law). Judge Myren dismissed Plaintiffs' claim for violation of a South Dakota Trade Regulation statute, SDCL 37-1-4, because that claim was preempted by federal law. Doc. 3-60 at 12–13. Judge Myren also concluded that Plaintiffs could not proceed in state court on one of their two theories for dissolution of SDN under SDCL 47-34A-801(a)(4) because that theory—alleged illegal or fraudulent conduct by SDN's managers—was predicated on alleged violations of the FCA, but that the alternative theory for dissolution—that it is not otherwise reasonably practical

to carry on SDN's business—may proceed.[3] Doc. 3-60 at 16. Judge Myren's decision left Plaintiffs with state law claims of breach of the SDN operating agreement, breach of lease contracts, intentional interference with business relationships, unjust enrichment, conversion and legal claims for dissolution and declaratory judgment. To underscore how serious Judge Myren was to purge Plaintiffs' case of federal law issues, Judge Myren substantially restricted Plaintiffs' proposed experts' testimony including debarring opinions about the SDN-AT&T Agreement allegedly being unlawful under FCC rules. Doc. 3-60 at 19–20.

SDN nevertheless filed a Notice of Removal to this Court on August 30, 2017. Doc. 1. SDN asserted that an ex parte filing made by Plaintiffs to the FCC on August 4, 2017, first brought to SDN's attention that Plaintiffs' state law claims actually articulated a federal claim. Docs. 1, 1-1. In particular, the Notice of Removal asserts that Plaintiffs are making a federal law claim to exclusive authority for or a monopoly over certain transport services, are using the Protective Order in 14-CV-1018-RAL to take inconsistent positions in litigation, and are basing their dissolution claim in state court over an allegation that SDN's contract with AT&T was illegal under federal law. Doc. 1. SDN also filed a Motion to Consolidate the cases, Doc. 5, and a Motion for Modification of the Confidentiality Agreement to Access Certain Records Under Seal, Doc. 7.

Plaintiffs responded with a Motion to Remand. Doc. 17. In its brief in support of Motion to Remand, Plaintiffs make clear multiple times that their state law claims do not require the state court to resolve any questions of federal law. For instance, on page two of the brief in support of Motion to Remand, Plaintiffs state, "there are no questions of federal law that the state

---

[3] Comments by Plaintiffs' counsel suggest that the claim for dissolution of SDN, added by amending the complaint after SDN sought expulsion of JVT, is not the relief that Plaintiffs want in this case.

court must resolve in deciding whether Plaintiffs are entitled to recover from SDN for its breach of those agreements [referencing SDN's operating agreements and SDN's circuit lease with NVC]." Doc. 18 at 2. As for SDN's assertion that Plaintiffs are claiming "that federal law grants [Plaintiffs] an exclusive transport monopoly binding upon both SDN and AT&T," Plaintiffs state unequivocally: "Of course, SDN never bothers to point to anything in which Plaintiffs actually claim *that*, and it is certainly not in Plaintiffs' complaint. That is unsurprising, because it is not Plaintiffs' position." Doc. 18 at 6. Later, Plaintiffs state "that Plaintiffs *never* claim any 'monopoly' right under federal law to carry any particular traffic [but rather claim that] [a]ny right that NVC has to carry AT&T's traffic springs, first and foremost, from SDN's Operating Agreement and its lease for the transport circuit with NVC." Doc. 18 at 10. Plaintiffs repeat these positions in their reply as well. Doc. 27 at 5, 10. ("There is simply no way in which Plaintiffs' claims can be morphed into a dispute about federal law.").

Plaintiffs, however, equivocate on the existence of a federal law issue pertaining to their dissolution action against SDN. For instance, Plaintiffs in their brief in support of the Motion to Remand argue:

> SDN's breaches of federal law are but one of its unlawful acts, and the state court could well find that SDN should be held liable solely for its oppression of a minority member *after* that member and their affiliate highlighted for SDN and its management that they were proceeding down an unlawful path.

Doc. 18 at 12. Likewise, in Plaintiffs' reply, Plaintiffs make clear that they want to press a claim of a violation of federal law only as it relates to the dissolution claim and not to the other state law claims:

> Judge Myren and the jury can decide whether SDN is liable for any of Plaintiffs' state law claims without regard to federal law. SDN's violations of federal law may provide *additional bases* for Judge Myren's decision to dissolve SDN, but he can just as readily find that SDN's pattern and practice of state-law violations and related minority-member oppression are sufficient.

8

Doc. 27 at 8; see also Doc. 27 at 9 ("[A]ny embedded federal issue is, at most, an alternative theory upon which judgment could be rendered in their favor (i.e., the court could dissolve SDN either for violation of state *or* federal law)"). Thus, Plaintiffs make judicial admissions that there is no federal law issue pertaining in any way to any of their state law claims, except on an alternative theory for dissolution of SDN.

## II. Discussion

### A. Motion to Remand

A case may be removed to federal court only where the federal court would have original jurisdiction. 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). The defendant removing the case from state to federal court bears the burden of proving that removal was proper and that federal subject matter jurisdiction exists. In re Business Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993) (per curiam); State v. Wayfair, Inc., 229 F. Supp. 3d 1026, 1030 (D.S.D. 2017). Federal courts, of course, have a "virtually unflagging" obligation to hear and decide cases within federal jurisdiction. Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976). Yet, "[f]ederal courts are to 'resolve all doubts about federal jurisdiction in favor of remand' and are strictly to construe legislation permitting removal." Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 968 (8th Cir. 2007) (quoting Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997)).

SDN references federal question jurisdiction under 28 U.S.C. § 1331 as supporting removal. Under § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Typically, to determine whether a claim arises under a federal law, district courts examine the "well pleaded allegations of the complaint and ignore potential defenses." Beneficial Nat'l Bank v. Anderson,

539 U.S. 1, 6 (2003). That is, "absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Id. at 6; Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 27–28 (1983). Indeed, as the master of the claim, a state court plaintiff generally can avoid removal to federal court by alleging only state law claims. Moore v. Kansas City Pub. Sch., 828 F.3d 687, 691 (8th Cir. 2016); Johnson v. MFA Petroleum Co., 701 F.3d 243, 247 (8th Cir. 2012). Defendants in turn are not "permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law" through removal papers. Centr. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009) (quoting Gore v. Trans World Airlines, 210 F.3d 944, 948 (8th Cir. 2000)).

SDN does not assert that federal jurisdiction exists based on the allegations of the Complaint, First Amended Complaint, or Second Amended Complaint; indeed, SDN would be tardy in filing for removal as the most recent of those apparently was filed in April of 2016. See 28 U.S.C. § 1446(b)(1) & (3) (setting 30-day period for defendant to file notice of removal). Rather, SDN relies on certain excerpts of Plaintiffs' August 4, 2017 ex parte filing with the FCC and invokes § 1446(b)(3) that allows a notice of removal to be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). SDN asserts that the ex parte filing with the FCC is such an "other paper" and then argues for removal under Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005).

In Grable, the Supreme Court of the United States acknowledged that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal

10

issues." Id. at 312. The dispute in Grable involved a seizure and sale by the Internal Revenue Service of real property owned by Grable & Sons Metal Products, Inc. (Grable) to satisfy its federal tax delinquency. Id. at 310. Grable received notice of the seizure and sale, but did not exercise its right to redeem the property. Id. at 310. After the sale, the Government provided Darue Engineering & Manufacturing (Darue) a quit-claim deed to the property. Id. at 311. Grable later brought a state quiet title action, arguing that a federal statute required personal service for the notice of any seizure, rather than service by certified mail as Grable had received. Id. The Supreme Court held that the district court had federal question jurisdiction over the case because "[w]hether Grable was given notice within the meaning of the federal statute is . . . an essential element of its quiet title claim." Id. at 315. The Supreme Court in Grable ultimately adopted the following four-part test for determining whether a federal court has jurisdiction over a state claim: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

Since Grable, the Supreme Court has made clear that only a "special and small category" of cases will satisfy this four-part test. Empire Health Choice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006). In Empire, the Supreme Court held that a private insurance carrier's claim for reimbursement of benefits did not meet the Grable test even though the insurance carrier had contracted with the government under federal law to administer a health-care plan for federal employees and the contract obligated the carrier to make reasonable efforts to recover payments it was entitled to. Empire, 547 U.S. at 682–83, 685, 699–701. In holding that no federal jurisdiction existed in Empire, the Supreme Court identified several differences between Empire and Grable. First, the dispute in Grable focused on the action of a federal agency and its

compliance with a federal statute whereas the reimbursement claim in Empire was triggered by the settlement of a personal-injury action in state court. Empire, 547 U.S. at 700. Second, Grable presented a "nearly pure issue of law" that was dispositive of the case and would thereafter "govern numerous tax sale cases." Empire, 547 U.S. at 700 (citation omitted). In contrast, the reimbursement claim in Empire was too "fact-bound and situation-specific" for its resolution to affect numerous other cases. Id. at 700–01. Third, unlike in Grable where the meaning of the federal tax statute was "an important issue of federal law that sensibly belong[ed] in federal court," Grable, 545 U.S. at 315, the Supreme Court in Empire found it "hardly apparent why a proper federal-state balance would place such a non-statutory issue under the complete governance of federal law, to be declared in a federal forum." Id. at 701 (citations omitted).

This case is far closer to Empire than to Grable. To begin with, Plaintiffs' state-law claims do not "necessarily" raise the issue that federal law gives them a monopoly over certain transport traffic. Not only has Judge Myren narrowed Plaintiffs' claims to those involving only state law, but Plaintiffs have made a judicial admission in this Court that any right to carry particular traffic comes from the operating and lease agreements rather than federal law. Unlike in Grable, where deciding an issue of federal law was inescapable, no issue of federal law needs to be resolved in Plaintiffs' state case. Next, Plaintiffs' claims do not present a pure issue of law that is significant to the federal system as a whole, but rather involve fact-intensive questions that are only relevant to these parties. For instance, Plaintiffs' breach of contract claims will require interpretation of the parties' agreements and application of state contract law. Similarly, Plaintiffs' claim for intentional interference with a business relationship will require the finder of fact to consider whether SDN violated the parties' contractual intentions as well as SDN's

12

motives for contracting as it did with AT&T. See Doc. 3-60 at 12. Finally, given the absence of any substantial federal issue, exercising jurisdiction over this case would upset the balance of federal and state judicial responsibilities.

True, Plaintiffs maintain that the SDN and AT&T contract was contrary to federal law and that this is an alternative basis for their claim for dissolution of SDN. But Judge Myren's decision recognized that this claim for dissolution predicated on an alleged violation of federal law is preempted, Doc. 3-60 at 16, and clearly debarred Plaintiffs' expert from testifying about the SDN-AT&T Agreement being unlawful or inconsistent with FCC rules, Doc. 3-60 at 20.

At the hearing on these motions, SDN's argument changed somewhat, with SDN arguing that part of its defense to the state court claims will be to argue that SDN had an obligation to provide AT&T rate relief and that SDN discussed how to do so with the FCC before entering into the 2014 agreement with AT&T. This is a different theory for removal than what SDN asserted in its Notice of Removal, perhaps because Plaintiffs' judicial admissions largely remove SDN's initial grounds argued as supporting removal. Still, a defendant like SDN cannot "inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." Centr. Iowa Power Coop., 561 F.3d at 912; (quoting Gore, 210 F.3d at 948). Moreover, that defense argument has long existed in this case and did not arise with the ex parte filing to the FCC on August 4, 2017,[4] or otherwise within 30 days of the filing of the Notice of Removal. See 28 U.S.C. § 1446(b)(1) & (3) (setting 30-day time period within which to file notice of removal). SDN has not met its burden to demonstrate federal jurisdiction or the removability of the case.

---

[4] There is the added issue of whether an ex parte filing to the FCC truly qualifies as an "other paper" under § 1446(b)(3) upon which removal can be based. This Court need not resolve that question because removal is otherwise improper.

13

### B. Remaining Motions

SDN has filed a Motion to Consolidate Related Actions, Doc. 5. Certainly, this case is related to the pending case that this Court has between NVC and AT&T. However, because the case is not removable, the Motion to Consolidate Related Actions, Doc. 5, will be denied as moot.

SDN also has filed a Motion to Modify the Confidentiality Agreement so that it may have access to certain filings made under seal. Doc. 7. In particular, SDN desires access to Documents 85–89, 93–96, 99–102, 104–107, 109–111, 121, 139–144, 151–154, 161–164, and 171–172. Document 121 has been unsealed. AT&T, a party to the Confidentiality Agreement, did not participate in the October 25 hearing.[5] The Court encourages NVC and AT&T to allow SDN access to documents filed under seal in 14-CV-1018-RAL, but will deny without prejudice to refiling otherwise the Motion to Modify Confidentiality Agreement. Because there is an absence of federal jurisdiction here and because AT&T, a party to the Confidentiality Agreement has not weighed in, granting the motion to modify the confidentiality agreement is improper.

### C. Plaintiffs' Request for Fees

In the brief in support of Motion to Remand, Plaintiffs argue that they should be awarded their fees in securing the remand under 28 U.S.C. § 1447(c). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Awarding fees under § 1447(c) is discretionary, as the statute uses the verb "may require." Certainly, a court ought to require payment of costs and fees when there is a question about improper motive behind the attempted removal, although the statute does not require a finding of bad faith or improper motive as a

---

[5] A lawyer for AT&T was at the motion hearing in this case, but did not identify himself until the end of the hearing and merely observed rather than participated in the hearing.

condition to awarding fees and costs. See, e.g. Dakis v. Allstate Ins. Co., No. Civ. 02-3679 (PAM/RLE), 2003 WL 118245 at *2 (D. Minn. Jan. 8, 2003) (collecting cases). Here, the removal was improvident, although the reason for removal does not appear to be driven by bad faith. The case for removal did strike this Court as thin, particularly when considering that it came long after the Second Amended Complaint, well after SDN was aware of federal issues surrounding some of the claims, after Judge Myren's decision limiting Plaintiffs' claims and experts to state law theories and matters, and upon the approach of a trial date in early March of 2018. This Court wants to give the award of fees and costs under § 1447(c) further thought and invites Plaintiffs to file an affidavit setting forth their requested fees and costs. This Court does not want further briefing or argument on the matter, however.

### III. Conclusion

For the reasons contained in this Opinion and Order, it is hereby

ORDERED that Plaintiffs' Motion for Remand, Doc. 17, is granted. It is further

ORDERED that the Motion to Consolidate Related Actions, Doc. 5, is denied as moot. It is finally

ORDERED that the Motion to Modify Confidentiality Agreement, Doc. 7, is denied without prejudice.

DATED this 13th day of November, 2017.

BY THE COURT:

/s/ Roberto A. Lange
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE